the whole it appears, that the plaintiff had no cause of action. If the demurrers are decided *before* the issues are tried, they shall not be tried; and if *after* the trial, it will make no difference, for in each case judgment of *nil capiat* shall be given against the plaintiff.

JUDGMENT AFFIRMED.

1813.

Greenwood *vs* Stoner

---

## Greenwood vs. Stoner.

DECEMBER.

APPEAL from *Frederick* County Court. The cause was argued in this court before *Chase*, Ch. J. and NICHOLSON, EARLE, and JOHNSON, J. The case sufficiently appears in the argument of the appellant's counsel.

The county court has no power, under the act of 1785, ch. 49, or any other law, to order a public road to be opened

*Taney*, for the Appellant, stated, that *John Stoner*, (the appellee,) petitioned for the road described in his petition, which passes through the land of *Greenwood*, (the appellant.) The court granted the road. *Greenwood* has appealed from the decision of the county court, to this court, and now prays that the same may be reversed, for the following reasons:

1. Because the court had not the power to grant the road in question.

2. Because it is unnecessarily injurious to *Greenwood*.

*First*. The power of granting private roads or ways is given to the county courts by the act of 1785, *ch.* 49, and they have no further power on this subject, than that given by this law. The power given to the court in the *third* section, is to grant *such* private road or way as is mentioned in the second section; that is, a road "*to and from the farm and plantation*" of the petitioner, "*to places of public worship*," and mills, &c. In other words, the courts have the power of granting to any individual a convenient outlet from his *farm, or plantation, to other places*, but not the power to open a road for the public convenience, or the convenience of a neighbourhood. The road applied for in the petition, is not a road "*to and from his farm or plantation*," to a place of public worship, or mill, or market-town, or public ferry, or court-house—but "*a road from Paul Hawk's* church to the petitioner's mill, and from his mill to intersect the public road leading from *Liberty*-town to *Baltimore*." The petitioner therefore does not bring his case within the act of assembly. It does not ap-

pear from the petition that the road in question touches any farm or plantation of the petitioner. It passes his mill. Any other person, or he himself, would have been entitled, under the law, to a way *"to and from his farm and plantation"* to his mill; but this is for the convenience of the owners *of the farms or plantations*, not of the owner of the mill. It is their privilege, not his. The power is not given to the court to grant to the owners of mills convenient roads to and from their mills, to churches or other places. The road in question is laid out from a church to a main road. The church, at which it begins, is proved in the record not to be the one frequented by the petitioner, and to belong to a different denomination of christians. After leaving the church nearly two-thirds of a mile, this *private way* enters the *public road* leading from *Frederick*-town to *York*-town, and runs to the middle thereof. It runs with this public road 19 perches, then passes over to the other side, and reaches the petitioner's mill, more than seven and a half miles distant from the church at which it set out; passes the petitioner's mill, and after running two miles (wanting 46 perches,) further, and passing two other mills, it reaches the land of *Greenwood*, the appellant; then goes on the public road from *Liberty*-town to *Baltimore*, distant about four miles, and three quarters of a mile from the petitioner's mill, and passing three more mills in its way. The whole length of the road is 3979¼ perches, more than twelve and a quarter miles. It passes six mills, including the petitioner's, crosses the great road from *Frederick*-town to *York*-town, and runs with it part of the way. Such is the road asked for in the petition, and granted by the court: a road which it might be proper for the legislature by law to open, but which is believed not to be such *"a private road or way to and from a farm or plantation,"* as the county court are empowered by law to grant.

*Second.* To prove that the road granted by the court was unnecessarily injurious to the petitioner, he referred to the depositions of the witnesses which appeared in the record, but which it is unnecessary to notice here. And he contended, that the petition itself proved conclusively that the road in question was intended, and was to be, a public neighbourhood road, and not a private road or way for the petitioner's own use. That it stated that *"the pe-*

*titioner, with a number of others, labour under great inconvenience for the want of this road."* The neighbourhood inconvenience, therefore, was the foundation of the application to the court, and for the general benefit of the neighbourhood the road was applied for.

No counsel argued for the appellee.

JUDGMENT REVERSED.

---

HOLLINS use of THE NEW YORK INSURANCE COMPANY, vs. BARNEY

APPEAL from *Baltimore* County Court. This was an action of *assumpsit*, and the declaration contained the usual money counts. The general issue was pleaded; and at the trial, the plaintiff, (now appellant,) gave in evidence, an admission of the defendant, (the appellee,) under his hand, that he had received on the 6th of April 1800, the sum of 22,138 livres, 5 sous, and 11 deniers, current money of *France*, equal to the sum of $4,025 14 cents current money of the *United States*, of the money of the plaintiff, arising from the sale of the cargo of a vessel called *The Patapsco*, which cargo belonged to the plaintiff, and had been captured and carried to *France*, and was there claimed by the defendant, and recovered and sold by him for the said sum. The defendant then read in evidence the following letter from the plaintiff to him, dated the 24th of December 1802; "Inclosed is my account current with you, balance in my favour $2600 52, without interest—nor have I charged you with the ship *Patapsco's* cargo received by you in *France*, which by your account current appears to be 22,138 5 11, or $4025 14, for two reasons— *first*, because the sum does not agree with my expectations as to the amount; *secondly*, the property was insured in *New York*, and abandoned to the underwriters, who paid me in full. Perhaps, however, they may appoint me their agent, and in that case you shall be informed. You will perceive also that no credit is given for what you are pleased to call my proportion of *Fenwick's* judgment, 1272 livres, or $1766 10, being at present totally dark on that subject. At the foot of the account two items are put down, but not the amounts. The first for want of information, and so of the second—which will depend upon the amount awarded in *London*. Some other entries may

In an action of *assumpsit* brought by J H, for the use of N Y, against J B, for a sum of money stated to be received for him by J B, from the sale of the cargo of a vessel belonging to J H, which had been captured, &c.—*Held*, that J. H, having caused the cargo to be insured by N Y, (for whose use the action was brought,) and after the capture having abandoned the cargo to the insurers, and having been paid by them, the action could not be maintained